Guglielmo NASELLI

v.

Ralph H. HOLTON, District Director, Immigration and Naturalization Service.

No. 55 C 210.

United States District Court
N. D. Illinois, E. D.

March 6, 1956.

Anthony Scariano, Chicago, Ill., for plaintiff.

**894**

R. Tieken, U. S. Atty., Chicago, Ill., for Ralph H. Holton.

LA BUY, District Judge.

The above complaint in two counts is brought against the District Director of the Immigration and Naturalization Service to review his denial of the plaintiff's application for adjustment of status, and also to declare the same null and void for lack of due process. Count I premises jurisdiction upon the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and Count II is brought under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202.

Count I alleges that plaintiff, an Italian citizen, lawfully entered this country on June 16, 1952 upon the basis of a non-immigrant visitor's visa; that he married a citizen of the United States on April 27, 1954; that pursuant to the provisions of § 245, 8 U.S.C.A. § 1255, of the Immigration and Nationality Act he applied for an adjustment of his status from that of a non-immigrant to that of an alien lawfully admitted into the United States for permanent residence as a non-quota immigrant; that in connection with said application he was physically examined by the personnel of the Marine Hospital, United States Public Health Service; that said examination allegedly determined that plaintiff had tuberculosis and his application for adjustment of status was denied on September 17, 1954 by the district director; that said denial was appealed to the Assistant Commissioner, Inspections and Examinations Divisions, at Washington and on October 21, 1954 that officer affirmed the decision of the district director; that after the medical report and examination by the United States Public Health Service the plaintiff underwent a thorough physical examination by a competent medical specialist who determined that plaintiff did not have tuberculosis; that the defendant refused to consider the examination of plaintiff by such physician; that plaintiff made an appeal for a physical examination by a Board of Medical Offi-

cers at his own expense and said request was refused; that on November 4, 1954 plaintiff was informed by defendant that he would be required to depart the United States and upon his failure to do so he would be deported. Plaintiff alleges that no provision of law required plaintiff to undergo a physical examination upon an application for change of status, that the denial of the application for adjustment of status was an abuse of discretion and lacked due process of law.

Count II alleges that an actual controversy exists and incorporates the allegations of Count I relating to the application, physical examination, and denial thereof by the district director and the assistant commissioner, and prays the court to find that such a denial is a nullity and void since it was in violation of the due process clause of the Fifth Amendment of the Constitution of the United States.

The government has filed a motion to dismiss said complaint on the ground (1) that the Commissioner of Immigration and the Attorney General are necessary parties to said action; (2) that Count I fails to state a claim upon which relief can be granted since the Administrative Procedure Act is not applicable; and (3) that Count II fails to state a claim for the reason the Declaratory Judgments Act cannot be relied upon as a basis of jurisdiction.

In Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868, the Supreme Court of the United States held that the Administrative Procedure Act was applicable to review deportation orders of the Attorney General and also held that the Commissioner of Immigration was not an indispensable party to such a suit. To the extent that the necessary joinder of the Commissioner and Attorney General is determined in that case, no necessity exists for this court to consider further the government's motion to dismiss for lack of necessary parties.

In the instant case there is no order of deportation. It would be unrealistic,

however, to assume that the hearings conducted on an adjustment of status, where the adjustment has been denied, will not result in placing the plaintiff in a "deportable" class of aliens defined in § 1251, 8 U.S.C.A. In fact, the allegations of the complaint and the regulations issued under the authority of § 1255 thereof intimate that deportation proceedings would be the next step.

In seeking to determine whether the specific proceeding of which plaintiff complains is within the judicial review provisions of the Administrative Procedure Act, it is pertinent at the outset to consider it with respect to § 1006 of that Act, 5 U.S.C.A., and with respect to pronouncements of the Supreme Court on cases involving deportation proceedings.

Section 1006 of the Administrative Procedure Act provides:

"In hearings which section 1003 or 1004 of this title requires to be conducted pursuant to this section—

"(a) There shall preside at the taking of evidence (1) the agency, (2) one or more members of the body comprising the agency, or (3) one or more examiners appointed as provided in this chapter; but nothing in this chapter shall be deemed to supersede the conduct of specified classes of proceedings in whole or part by or before boards or other officers specially provided for by or designated pursuant to statute. * * *"

The above section and § 1001, 5 U.S.C.A., are the only provisions which determine the scope of exemption from the provisions of the Administrative Procedure Act. Section 1001 is specific as to the agencies excluded from its operation and does not exclude the administrative agency here involved.

It is settled that as to deportation and exclusion proceedings, the Administrative Procedure Act is applicable. Shaughnessy v. Pedreiro, supra. In that case an order of deportation issued by the Attorney General was held to be a "final" order within § 1009 of the Act, and the deportation hearings and procedure incident thereto were held reviewable by the court. In view of this holding, there was no need for the Supreme Court to consider § 1006 of the Act and its exclusion of "specified classes of proceedings". Under the earlier Immigration and Nationality Act, the Supreme Court had occasion to discuss the relation of § 1006 to orders of deportation. Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616. In that case the court held that the exemption contained in § 1006 did not extend to deportation hearings for the reason that the Immigration and Nationality Act made no express requirement for any hearing or adjudication authorizing deportation; that although the statute did provide for examination and hearings to be conducted by immigration inspectors in cases of aliens nothing therein specifically authorized that they conduct deportation hearings or be designated to do so. The present Immigration and Nationality Act, however, does authorize and designate hearings by special inquiry officers in connection with exclusion and deportation cases, 8 U.S.C.A. §§ 1226, 1252, and provides for an appeal to the Board of Immigration Appeals whose decision is final, except where the Attorney General in his discretion, or by request of the Board or Assistant Commissioner, reviews the same. In the Pedreiro case, it was the Attorney General's decision upon which the deportation order was issued that was subject to review as being the "final" order in deportation proceedings.

■ The present proceeding must be distinguished from a deportation hearing held reviewable under the Administrative Procedure Act. Does § 1006 of that Act exempt "adjustment of status" proceedings held before an immigration officer authorized to hear the same pursuant to regulations promulgated by the Attorney General under specific statutory authority? Section 1255, 8 U.S.C.A., commits the decision with respect

**896**

to adjustment of status to the discretion of the Attorney General and sets forth the classes to which such adjustment applies. Pursuant to the express authority of that section regulations were promulgated designating the hearing to be had before an immigration officer in connection with an application for adjustment, provide for the presentation of evidence, and also provide for the physical and mental examination of the applicant by a medical officer of the United States Public Health Service.

The regulations also provide that if the application is denied by the district director, to whom the report of the immigration officer is submitted with his recommendation, that the applicant has the right of appeal to the Assistant Commissioner whose decision is final. Thereafter, the initiation of deportation proceedings rests upon the immigration officers designated to administer the same and there is nothing the applicant can do except await the commencement of such hearings. Therefore, if the Administrative Procedure Act is held applicable, the denial of adjustment of status is a final order in the sense that no provision for judicial review thereof is contained in the statute or regulations, and in the sense that it is "final agency action" 5 U.S.C.A. § 1009(c), preceding deportation hearings. The order is not, however, a final order in deportation hearings which has been held reviewable. Shaughnessy v. Pedreiro, supra.

It is true that both the Administrative Procedure Act and the Supreme Court of the United States indicate that its provisions should be liberally construed to effect the object of the Act. Nevertheless, the Act itself contains exceptions to its application.

The court is of the opinion the instant proceeding is clearly within the terms of those "specified classes of proceedings in whole or part by or before boards or other officers specially provided for by or designated pursuant to statute" which are not superseded by the Administrative Procedure Act. The court is therefore without jurisdiction to review the denial of adjustment of status.

 There being no general jurisdiction existing in the district courts with reference to status of aliens, nationals or citizens [except as authorized under § 1503(a), 8 U.S.C.A.], the court has no jurisdiction under the Declaratory Judgments Act as alleged in Count II of the complaint.

An order has this day been entered sustaining the government's motion to dismiss the complaint for lack of jurisdiction.